IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BECKY HARDING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-6700 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| HARTFORD LIFE AND ACCIDENT ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Becky Harding's motion to compel and memorandum regarding the scope of discovery [20]. For the reasons set forth below, Plaintiff's motion to compel [20] is granted in part and denied in part.

**I.    Background**[1]

Plaintiff Becky Harding was an operations analyst for PrivateBancorp, Inc. ("Private Bank") from August 2003 through June 2012. [1, ¶ 7.] On August 13, 2011, Plaintiff allegedly became disabled as a result of degenerative joint disease in her knees, rheumatoid arthritis, degenerative disc disease, and other impairments. *Id.* ¶ 8. Through her employment with Private Bank, Plaintiff received short-term and long-term disability coverage and life insurance that was issued, underwritten, and administered by Defendant Hartford Life and Accident Insurance Company. *Id.* ¶ 9. Except for a period when Plaintiff returned to work, Defendant paid Plaintiff short-term and long-term disability benefits and provided for the continuation of her life insurance benefits. On March 14, 2014, Defendant terminated Plaintiff's long-term disability

---

[1] The Court takes these facts from the Plaintiff's complaint, which it offers for background purposes only.

payments and life insurance premium waiver. *Id.* Plaintiff appealed this decision, but Defendant declined to overturn its denial of benefits. *Id.* ¶ 12. This suit followed.

Plaintiff asserts a claim under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") for recovery of long-term disability benefits, declaratory relief that these benefits are to continue, and waiver of premium benefits for her life insurance and supplemental life insurance. [16, at 2.] In connection with this claim, Plaintiff has sought two depositions. The first is of Dr. Julia Ash, M.D., an independent medical consultant retained by Professional Disability Associates (whom Defendant retained) to review Plaintiff's medical records. [20, at 3.] The second is of Mary Roman, a claim manager who rendered the decision denying Plaintiff's claim on appeal. *Id.* Defendant opposes both depositions.

**II.      Legal Standard**

In ERISA cases, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). "If such discretion is granted, court review is under the arbitrary and capricious standard." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 837 (7th Cir. 2012); see also *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 449 (7th Cir. 2009) (noting that "the arbitrary-and-capricious standard * * * is synonymous with abuse of discretion" for ERISA claims). These different standards of review inform the scope of permissible discovery. Where the arbitrary and capricious standard is used, discovery is generally not permitted. See *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 813–14 (7th Cir. 2006); *Dennison v. MONY Life Ret. Income Sec. Plan for Employees*, 710 F.3d 741, 747 (7th Cir. 2013) (explaining that there has been a "softening, but not a rejection, of the

2

standard announced in *Semien*"). If *de novo* review applies, discovery may be available but is not guaranteed. *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 490 (7th Cir. 2007).

The parties agree that *de novo* review applies here. [20, at 1–3; 22 at 2–3; 16, at 3.] Under this standard, a court "makes an independent decision about how the language of the contract applies to those facts" and the case "should be conducted just like contract litigation." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). Nevertheless, the Court has "discretion to 'limit the evidence to the record before the plan administrator, or * * * [to] permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment.'" *Patton*, 480 F.3d at 490 (quotation omitted)).

"Numerous factors are relevant to the district court's decision, the most central being the court's need to hear the evidence in order to make an informed evaluation of the parties' claims and defenses * * *, which will obviously depend on the nature of the claims and whether the administrative record was 'relatively undeveloped' with respect to those claims." *Id.* at 490–91. Other relevant factors include "whether the evidence the parties seek to introduce would concern plan terms or historical facts concerning the claimant, whether the plan administrator faced a conflict of interest and * * * whether the parties had a chance to present their evidence in the ERISA administrative proceeding." *Id.* at 491. "[N]o factor is necessarily determinative." *Id.* In weighing these factors, "[a] court should not automatically admit new evidence whenever it would help to reach an accurate decision." *Id.* at 492. Discovery should be allowed "only where the benefits of increased accuracy exceed the costs." *Id.*

**III. Analysis**

Plaintiff proposes to depose Dr. Ash "to determine the nature and extent of her qualifications, any economic or other biases that may have influenced her opinions, and the basis of her opinions." [20, at 3.] Likewise, she seeks to depose Ms. Roman "to determine the nature

and extent of her qualifications to render a disability benefit determination, any economic or other bias Ms. Roman may have had, and whether Ms. Roman adjudicated Plaintiff's claim appeal in accordance with" the appropriate standards. *Id.* at 3–4. While these deposition topics are similar, they implicate different concerns regarding the appropriate scope of discovery.

Dr. Ash's medical report is part of the evidence that the Court will consider in connection with its *de novo* review. As courts have explained, a physician's potential biases and conflicts of interest "could directly affect the Court's decision whether [Plaintiff] is or was actually disabled" because they bear on the credibility and reliability of her medical opinions. *Borich v. Life Ins. Co. of N. Am.*, 2013 WL 1788478, at *5 (N.D. Ill. Apr. 25, 2013); accord *Grant v. Standard Ins. Co.*, 2013 WL 2434698, at *1 (N.D. Ill. June 4, 2013) ("Evidence of a *doctor's* potential bias, however, is relevant because it goes to the credibility of the [physician's reports], which [the court] will consider when [it] make[s its] independent assessment as to whether Plaintiff is entitled to [long-term disability] benefits."); *Gavin v. Life Ins. Co. of N. Am.*, 2013 WL 2242230, at *2 (N.D. Ill. May 21, 2013) ("To the extent Defendants intend to rely on the medical opinions of the four subpoenaed doctors to prove that [plaintiff] is not entitled to [long-term disability] benefits, the doctors' potential financial bias or conflict of interest in issuing their medical opinions is a relevant factor for this court to consider."). "In other words, Dr. [Ash's] report 'is relevant not only to Defendant's denial of Plaintiff's claim but also to the merits of that claim.'" *Yasko v. Reliance Standard Life Ins. Co.*, 2012 WL 4797795, at *2 (N.D. Ill. Oct. 9, 2012). Defendant does not represent that it will forgo reliance on Dr. Ash's medical opinions. "It would be unfair for the Court to allow [Defendant] to rely on medical opinions without giving [Plaintiff] the opportunity to seek discovery regarding those opinions and to discredit them if they are the product of bias." *Borich*, 2013 WL 1788478, at *5.

Defendant offers three reasons that this discovery should be denied, none of which is persuasive. First, Defendant points out that some courts have, in their discretion, declined to allow medical consultant discovery, but none of these cases is directly on point. [22, at 4–7 (citing *Estate of Blanco v. Prudential Ins. Co. of Am.*, 606 F.3d 399 (7th Cir. 2010); *Novak v. Life Ins. Co. of N. Am.*, 956 F. Supp. 2d 900 (N.D. Ill. 2013); *Ehas v. Life Ins. Co. of N. Am.*, 2012 WL 5989215 (N.D. Ill. Nov. 29, 2012); and *Ball v. Standard Ins. Co.*, 2011 WL 2708366 (N.D. Ill. July 8, 2011)).][2] In *Blanco*, the Seventh Circuit affirmed the district court's decision to exclude at trial affidavits that the plaintiff submitted from his own physicians—a circumstance unlike a request to take *discovery* of a *defendant's* medical consultant. 606 F.3d at 402–404. Similarly, Defendant emphasizes that the plaintiff in *Nowak* was precluded from submitting an affidavit from her own pain specialist because she failed to "identify a specific aspect of her treatment that is not adequately discussed in the files already contained within the administrative record," which (again) is not the same as seeking to depose a defendant's medical consultant. 956 F. Supp. 2d at 913. In *Ehas*, the court rejected additional discovery of physicians and the claim administrator, but did so only because, in that case, "these requests go to any potential conflict of interest and the motive of the *administrator*" (not the physician). 2012 WL 5989215, at *11 (emphasis added); *Gavin*, 2013 WL 2242230, at *3 (distinguishing *Ehas*). In *Ball*, the court found that inquiries into the physicians' opinions were irrelevant because the court would "weigh all of the medical evidence [itself] and not rely on the opinions of the consulting physicians." 2011 WL 2708366, at *2. Defendant has not suggested that the Court should

---

[2] Defendant also cites *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569 (7th Cir. 2006), but acknowledges that this case involved application of the arbitrary and capricious standard. *Id.* at 757 ("This is a difficult road for [plaintiff] because the existence of potential bias, a potential conflict, is not enough to dislodge our ordinary arbitrary-and-capricious review.").

5

ignore Dr. Ash's report and look exclusively at Plaintiff's medical records alone, and thus *Ball*'s fact-specific holding has persuasive less force here.

Second, Defendant argues that the administrative record is comprehensive, contains Plaintiff's medical records, and should not upset the default that "extra-record" discovery is "limited" to the "'rare' case." [22, at 6 (citing *Patton*).] Neither side submits a copy of the administrative record, but the Court is skeptical that all of the evidence related to Dr. Ash's biases and conflicts is contained in the record itself. Regardless, *Patton* explained that it was "[r]eversals" of district courts' discovery decisions that would be "rare," 480 F.3d at 491, not that the decision to allow extra-record discovery in the first place should be rare.

Third, Defendant argues the equities. It contends that deposing Dr. Ash will allow Plaintiff to "sandbag" Defendant with new evidence and end run the requirement that Plaintiff exhaust her administrative remedies. [22, at 7.] It also argues that any potential benefit from this three-hour video teleconference deposition would be outweighed by its costs in light of this case's value. *Id.* Defendant does not explain precisely how it would be sandbagged if Plaintiff elicited evidence of the alleged bias, lack of qualifications, or unreliable opinions of *Defendant*'s medical consultant. If Plaintiff had a prior opportunity to submit this same evidence into the record, Defendant does not say what it was. Moreover, Defendant's argument that this one deposition would be unduly burdensome and outweigh the "relatively low amount of benefits at issue in this case" is significantly undercut by Defendant's "alternative request" to conduct *four* depositions (Plaintiff and her three treating physicians) if Plaintiff is permitted any extra-record discovery. [22, at 7, 13.] It is hard to see how the cost of taking Dr. Ash's deposition is unreasonable, but incurring the same costs to take five depositions is reasonable. Accordingly, the Court will permit Plaintiff's to depose Dr. Ash on the requested topics.

6

However, the Court is not persuaded to allow Ms. Roman's deposition. Ms. Roman's qualifications, her purported biases, and her decision making process are simply irrelevant under a *de novo* review because this Court must make an "independent decision" regarding Plaintiff's eligibility for benefits. *Krolnik*, 570 F.3d at 843. Said differently, "[w]hat happened before the Plan administrator or ERISA fiduciary is irrelevant." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007). The Court will not defer to or rely on Ms. Roman's decision to deny Plaintiff's appeal, which means questions about her biases or if she applied the correct standard to review Plaintiff's claim "ha[ve] no probative value whatsoever." *Borich*, 2013 WL 1788478, at *5.[3] "[D]iscovery into [Defendant's] decision-making process is barred." *Id.*

Plaintiff acknowledges that some of the very cases on which she relies deny discovery of claims adjusters. [See 20, at 6.] And the two cases she cites that permitted this kind of discovery are of little help to her. The first, *Marantz v. Permanent Med. Grp. Inc. Long Term Disability Plan*, 2006 WL 3490340 (N.D. Ill. Nov. 29, 2006), was decided without the benefit of the Seventh Circuit's decision in *Diaz* and does explain how discovery into whether the claims adjustor's decision-making process was tainted will inform a court's *de novo* review. The other, *Shepherd*, reasoned that the mere allegation that "Defendant has an inherent conflict of interest

---

[3] Accord *Diaz*, 499 F.3d at 643 ("[T]he question before the district court was not whether [defendant] gave [plaintiff] a full and fair hearing or undertook a selective review of the evidence; rather, it was the ultimate question whether [plaintiff] was entitled to the benefits he sought under the plan."); *Novak*, 956 F. Supp. 2d at 913 ("[T]o the extent [plaintiff] seeks to take discovery regarding whether the Plan administrator's decision was influenced by a structural conflict of interest, such conflict is irrelevant[.]"); *Grant*, 2013 WL 2434698, at *1 (denying discovery into "Defendant's general practices in administering the Plan, or whether Defendant fairly adjudicated Plaintiff's claim"); *Wise v. Life Ins. Co. of N. Am.*, 2012 WL 1203559, at *3 (N.D. Ill. Apr. 10, 2012) ("[E]vidence regarding conflict of interest, however, would be irrelevant in a *de novo* review case because the Court reviews the matter without regard to the administrator's decision."); *Yasko*, 2012 WL 4797795, at *2 ("[E]vidence solely explicating [Defendant's] review process is irrelevant" where a court conducts a *de novo* review.); *Walsh v. Long Term Disability Coverage for All Employees Located in the United States of DeVry, Inc.*, 601 F. Supp. 2d 1035, 1043 (N.D. Ill. 2009) ("[T]his court can discern no reason to inquire further into Defendants' compliance with ERISA's procedural regulations in relation to [plaintiff's] LTD claim."). But see *Shepherd v. Life Ins. Co. of N. Am.*, 2012 WL 379775, at *3 (N.D. Ill. Feb.3, 2012) (interpreting *Patton* to not foreclose consideration of conflict of interest in the scope of discovery inquiry in *de novo* review).

7

as both the claim administrator and the payor" is *not* sufficient to receive discovery since "nearly all insurance companies fit that description." 2012 WL 379775, at *3. Rather, in *Shepherd*, the plaintiff "claims to have received information that the insurance company specifically targeted her employer's group of employees to terminate benefits because there were a number of company employees on disability at the same time." *Id.* The court in *Shepherd* deemed that issue "potentially relevant" to the "whether the contract was honored," and permitted this discovery. *Id.* Plaintiff does not offer any similar factual allegations here that would justify deviating from the ordinary case to allow this discovery.

Furthermore, Plaintiff contends that "if [she] is successful in the litigation and wishes to seek fees, 'culpability' is a major factor the court will need to address in assessing whether to award fees." [20, at 6.] Of course, this is potentially true in *every* case. Yet, Plaintiff does not identity a single court that has permitted claims adjustor discovery on this basis. Nor does Plaintiff explain how questions into Ms. Roman's qualifications or whether she applied the correct standard when evaluating Plaintiff's appeal would have anything other than a speculative connection to culpability. Therefore, the Court denies Plaintiff's request to depose Ms. Roman.

In addition, the Court denies Defendant's request for additional discovery. If Defendant believes that the testimony elicited during Dr. Ash's deposition requires additional discovery from Plaintiff or her treating physicians, Defendant is free to reassert and justify its request.

**IV.    Conclusion**

For the foregoing reasons, the motion to compel [20] is granted in part and denied in part.

Dated: April 10, 2017

Robert M. Dow, Jr.
United States District Judge

8